UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Misty G., | Case No. 0:18-cv-00587-KMM |
| Plaintiff, | |
| v. | ORDER |
| Nancy A. Berryhill, *Acting Commissioner of the Social Security Administration*, | |
| Defendant. | |

Misty G. brought this suit challenging the Commissioner of the Social Security Administration's ("SSA") denial of her claim for disability benefits. Ms. G and the Commissioner have filed cross-motions for summary judgment. Pl.'s Mot., ECF No. 13; Def.'s Mot., ECF No. 15. Ms. G argues that the Commissioner's decision must be reversed because the denial of her benefits claim is not supported by substantial evidence. For the reasons stated below, Ms. G's motion is denied, and the Commissioner's motion is granted.

I.   Background

Ms. G suffers from several severe impairments, including major depressive disorder, anxiety disorder (not otherwise specified), left ovarian cysts and migraine headaches. Tr. of Administrative Record ("R."), at 19, ECF No. 12. The record also includes diagnoses of bipolar disorder, agoraphobia with panic disorder, and attention deficit hyperactivity disorder ("ADHD"). R. 691, 694, 821, 823, 827, 833, 838, 841. Between September of 2000 and April of 2011, Ms. G held jobs as an assembler for a production company, an installer for a home improvement or construction business, a manager or supervisor of a café and apartments, and a stocker at a retail establishment. R. 198. She applied for disability benefits on July 18, 2014, alleging that she became unable to work on April 11, 2011 as a result of her chronic migraine headaches, depression, and anxiety. R. 171, 197.

On an initial review, the SSA denied Ms. G's application. R. 71–84. Ms. G then requested reconsideration of that decision, but her claim was denied again. R. 87–98, 108. Ms. G next requested a hearing before an Administrative Law Judge ("ALJ"). R. 113–14. ALJ Denzel Busick ("ALJ Busick" or "the ALJ") held a hearing on Ms. G's claim for benefits on January 19, 2017, at which Ms. G was represented by counsel and testified in support of her claim. R. 33–60. ALJ Busick also heard testimony from Steve Bosch, a vocational expert, concerning the availability of jobs for someone with specific limitations like Ms. G's. *Id.*

After the hearing, the ALJ issued a written decision denying Ms. G's claim. R. 17–28. He applied a five-step sequential evaluation to Ms. G's claim, as required by the SSA's regulations. 20 C.F.R. § 404.1520(a). The ALJ concluded that Ms. G had not engaged in substantial gainful activity since April 11, 2011. R. 19. ALJ Busick next determined that Ms. G had the severe impairments mentioned above: major depressive disorder; anxiety disorder; left ovarian cysts; and headaches. R. 19. In determining Ms. G's severe impairments, the ALJ did not discuss the additional diagnoses of bipolar disorder, agoraphobia with panic disorder, and ADHD found in the records. R. 19. At the third step ALJ Busick found that Ms. G did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19–21. Because the Listings were not satisfied, he determined Ms. G's residual functional capacity ("RFC"), which is shorthand for the most a claimant can do in a full-time job despite her impairments. R. 21–27. The ALJ found that Ms. G had the ability to lift and carry 50 pounds and 25 pounds frequently and was able to sit a total of six hours, as well as stand and walk, combined, a total of six hours in an eight-hour workday. R. 21. However, Ms. G also required appropriate glasses or eyewear for vision. Most significantly for purposes of this case, the ALJ found that due to Ms. G's "moderate limitations in social functioning and in [maintaining] concentration, persistence, and pace, ... [she] is limited to work that involves brief and superficial contact with others while performing only simple, routine, and repetitive tasks of two to three steps on average." R. 21. Based on this RFC, ALJ Busick determined that Ms. G can perform her past relevant work as an electronics assembler, so she was not disabled between the alleged onset date (April 11, 2011) and her date last insured (March 31, 2016). R. 27–28.

Ms. G sought review of the ALJ's decision at the Social Security Appeals Council. However, the Appeals Council denied the request for further review, which made ALJ Busick's decision the final decision of the Commissioner subject to judicial review. 42 U.S.C. § 405(g). Ms. G filed this lawsuit, claiming that the ALJ's decision is the result of legal error and is not supported by substantial evidence.

## II. Legal Standard

Review of the Commissioner's denial of an application for disability benefits is limited and deferential, requiring the denial to be affirmed if it is supported by substantial evidence on the record as a whole. *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014). Substantial evidence is less than a preponderance of the evidence, but must be sufficient that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). A reviewing court is required to consider the evidence that both supports and detracts from the Commissioner's conclusion. *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000). The Commissioner's decision should only be disturbed if it lies outside the available zone of choice. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (internal quotation marks omitted). And a decision is not outside the available zone of choice merely because the court could reach a different conclusion if it were the initial fact finder. *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). A court should only reverse the ALJ where the record "contains insufficient evidence to support the outcome." *Id.*

## III. Discussion

Ms. G raises two issues in her summary-judgment motion. First, she argues that ALJ erred by failing to assess whether her bipolar disorder, agoraphobia with panic disorder, and ADHD are severe or non-severe impairments. Second, she contends that the ALJ erred by failing to consider her mental impairments and her migraines in combination. For the reasons discussed below, neither of these arguments requires reversal of the Commissioner's decision.

### A. Severe Impairments

Ms. G asserts that ALJ Busick failed to assess whether her bipolar disorder, agoraphobia with panic disorder, and ADHD diagnoses were severe or non-severe

impairments at step two of the sequential evaluation. Pl.'s Mem. at 3–5. At the second step, the SSA considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment must meet a twelve-month durational requirement to be considered severe. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th cir. 2006). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of establishing that a given impairment is severe. *Id.* at 707–08 (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

### 1. The Step-Two Discussion

Here, the ALJ's discussion of the issues at step two was rather conclusory. After listing the impairments found to be severe in a numbered paragraph, the ALJ wrote:

> The objective medical evidence of record establishes that the claimant was diagnosed with the above listed impairments. The undersigned finds these impairments impose more than minimal restriction on the claimant's ability to perform basic work activities and therefore are "severe" impairments within the meaning of the Regulations.
>
> The claimant has been diagnosed with hypertension. Exh. 3F, p. 2. However, there is no persuasive evidence that this condition causes any degree of functional limitation. Therefore, the undersigned finds that this impairment is not severe.

R. 19.

There is no comparable discussion concerning bipolar disorder, agoraphobia, or ADHD in the second step. This leaves open two possibilities: (1) the ALJ considered each of these impairments at the second step of the analysis, but said nothing about them in the written decision; or (2) the ALJ overlooked them. Considering the bipolar disorder, agoraphobia, and ADHD diagnoses did not receive the same treatment as

4

Ms. G's hypertension in the ALJ's written decision, the most reasonable conclusion is that the ALJ failed to consider them as part of the second step.[1]

### 2. Harmless Error for Step Two

Assuming that the ALJ's failure to consider Ms. G's bipolar disorder, agoraphobia, or ADHD impairments at the second step constitutes error, the Court must address whether such an error is reversible or harmless. The parties disagree whether harmless-error analysis applies. Citing *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007), Ms. G contends that any error at step two of the sequential evaluation requires reversal and remand to the SSA for further consideration. Pl.'s Mem. at 4, 5. The Commissioner disagrees, relying on *Lund v. v. Colvin*, No. 13-cv-113 (JSM), 2014 WL 1153508 (D. Minn. Mar. 21, 2014).

The Court finds that the Commissioner has the stronger position, and the complained of error in this case is amendable to harmless-error analysis. In *Nicola*, the Eighth Circuit reversed an ALJ's denial of benefits and remanded for further proceedings where the ALJ failed to find that Ms. Nicola's diagnosis of borderline intellectual functioning was a severe impairment at step two. The court explained that "[a] diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence." *Id.* at 887 (citing *Hunt v. Massanari*, 250 F.3d 622, 625–28 (8th Cir. 2001)).

Since *Nicola*, several district courts in the Eighth Circuit, including the District of Minnesota, have concluded that an ALJ's failure to find that an impairment is severe at step two is harmless error where the ALJ otherwise finds another severe impairment exists and addresses any functional limitations caused by the overlooked impairment

---

[1] One reason that perhaps explains why the ALJ's step-two analysis includes no mention of these conditions is that they do not appear in her original disability application or subsequent disability reports. R. 197 (listing only headaches/migraines, depression, and anxiety as the conditions that limit her ability to work); R. 233–50. The Commissioner cites *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007), and *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001), to highlight the significance of Ms. G's failure to refer to these impairments in her application. Though these cases do not establish a waiver rule, they do suggest that a claimant's failure to identify an allegedly disabling impairment is an appropriate consideration when the claimant argues that the ALJ erred in its treatment of that condition.

5

when determining the individual's RFC. *See Lund*, 2014 WL 1153508, at *26–27 (discussing non-binding cases showing a split of authority on whether an error at step two requires automatic reversal and concluding that remand was not required in Lund's case because the functional limitations caused by Lund's depression and anxiety were considered by the ALJ in the RFC determination); *Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 (JRT/SER), 2012 WL 4328413, at *21 (D. Minn. July 11, 2012), *report and recommendation adopted,* No. 11-cv-1268 (JRT/SER), 2012 WL 4328389 (D. Minn. Sept. 20, 2012) ("[T]he failure to find additional impairments at Step Two does not constitute reversible error when an ALJ considers all of a claimant's impairments in the remaining steps of a disability determination."); *Gavins v. Astrue*, No. 4:10-cv-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012). Other courts, relying on the Eighth Circuit's decision in *Nicola*, have concluded that an error at step two cannot be harmless. *See Tonya S.G. v. Berryhill*, 2018 WL 4441467, at *6 (D.S.D. Sept. 17, 2018) (rejecting the argument that an error at step two can be harmless) (citing *Nicola*, 480 F.3d at 887); *Stewart v. Astrue*, No. 09-cv-3170, 2011 WL 338794, at *3 (W.D. Mo. Jan. 31, 2011) (citing *Nicola* for a *per se* rule of reversal where there is an error at step two); *Lamorte v. Astrue*, No. 3:08-cv-03040, 2009 WL 3698004, at *4 (W.D. Ark. Nov. 2, 2009) (same).

This Court concludes that *Nicola* does not "establish[]a *per se* rule that any error at step two is a reversible error." *Lund*, 2014 WL 1153508, at *26 (describing cases that have concluded *Nicola* does not foreclose harmless error analysis in all cases). The better reasoned cases explored above hold that an error in assessing impairments as severe or non-severe at step two can be harmless when the ALJ continues the sequential evaluation and considers the functional effect of all of the claimant's impairments, even those that may have been overlooked at the second step. For instance, in *Lund*, the reviewing court distinguished *Nicola* based on the unique challenges created by the borderline intellectual functioning impairment at issue in that case. *Lund*, 2014 WL 1153508, at *27. The *Lund* court found the alleged error before it to be harmless where the ALJ proceeded past step two of the sequential analysis and considered all of Lund's impairments and the way they impacted the claimant's abilities. *Id.*; *see also Johnson*, 2012 WL 4328413, at *21 & n. 36 (reasoning that "a presumptive rule" of reversible error" at step two overstates *Nicola*, would be inconsistent with the majority rule in other circuit courts, and would be inconsistent with other Eighth Circuit

precedent suggesting that an error at step two can be harmless) (citing precedent from other circuits in footnote 36 and *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Ms. G argues that the cases concluding that a harmless-error analysis may be conducted for an error at step two only apply where the ALJ expressly addresses an impairment and determines that it is not severe; in this case, however, she contends that the ALJ failed even to evaluate whether bipolar disorder, agoraphobia, or ADHD were severe or non-severe. *See* Pl.'s Reply at 2-3. Although this is an important distinction that could change the calculus in certain cases, it does not change the Court's conclusion with respect to the ALJ's decision in this case. Courts review an ALJ's decision for harmless error when an ALJ finds that an alleged impairment is non-severe at step two because the subsequent steps of the sequential evaluation require a consideration of the functional limitations caused by all of a claimant's impairments, whether they are severe or not. *Johnson*, 2012 WL 4328413, at *21 ("As Judge Ann D. Montgomery explained in *Bondurant v. Astrue*, [No. 09cv328 (ADM/AJB), 2010 WL 889932, at *2 (D. Minn. Mar. 8, 2010)], any error at Step Two is harmless because if Plaintiff makes a threshold showing of any severe impairment, the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe.") (emphasis and internal quotations removed). This same reasoning applies even if an ALJ fails to discuss whether certain impairments are severe or non-severe at the second step (which is the case here), as long as the limitations caused by these impairments are adequately assessed later in the process. *See id.* at *22 ("Assuming arguendo that the ALJ erred in failing to find certain impairments severe and *not evaluating the severity of other impairments*, that error is harmless here.") (emphasis added). Even if an ALJ allegedly errs by failing to evaluate the severity of an impairment at step two, the determination of the claimant's RFC nevertheless requires the ALJ to factor in any functional limitations attributable to the overlooked impairments. If the ALJ's RFC determination adequately accounts for the functional limitations attributable to an erroneously disregarded impairment, then the error at step two will not make a difference to the outcome because the RFC would be the same either way. However, the step two error cannot be dismissed as harmless if the RFC

finding omits the claimant's relevant functional limitations, and a remand would be necessary to correct the analysis.[2]

In sum, the Court concludes that harmless-error analysis may appropriately be applied in this case even though the ALJ arguably erred at step two by failing to address whether certain mental-health conditions were severe or non-severe.

### 3. Application of Harmless-Error Test

In light of this conclusion, the question becomes whether the error in this case was, in fact, harmless. Here, the ALJ proceeded to subsequent steps in the sequential analysis based on a finding that Ms. G suffers from several severe impairments. As explained above, related to her mental health, ALJ Busick specifically determined that Ms. G has severe impairments of depression and anxiety. The ALJ then went on to consider whether Ms. G's mental-health impairments, either individually or combined, meet or medically equal any of the Listings, and he eventually evaluated her RFC. Based on the ALJ's discussion of Ms. G's mental-health symptoms and the resulting functional limitations, and having reviewed the record as a whole, the Court concludes that any error committed by the ALJ at step two is harmless.

*Listings Discussion*

In evaluating the Listings at step three of the sequential analysis, ALJ Busick was required to consider Ms. G's limitations in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. 20 C.F.R., Part 404, Subp. P, App. 1, § 12.00. He

---

[2] Ms. G relies on *Alberts v. Colvin*, No. 3:15-cv-46, Doc. No. 23 (D.N.D. Mar. 14, 2016), to support of her position. Citing *Nicola*, the *Alberts* court reversed and remanded an ALJ's decision because, at step two, the ALJ failed to discuss whether the claimant's carpal tunnel syndrome was a severe or non-severe impairment. *See id.*, Doc. No. 23 at 8–9. However, a close review of the *Alberts* decision suggests that the court relied on the same reading of *Nicola*—i.e., that it establishes a *per se* rule of reversible error at step two—that this Court has determined is too broad. *Id.* (rejecting the Commissioner's argument that the ALJ's decision was based on the entire record "because the RFC determination is made <u>after</u> the step two analysis," and citing *Nicola* to support the proposition that "the absence of any finding at step two regarding the severity of Alberts' [carpal tunnel syndrome] constitutes reversible error") (underlining in original).

determined that Ms. G had moderate limitations in understanding remembering, or applying information, in interacting with others, and in concentrating, persisting, or maintaining pace, but no limitations in managing herself. R. 20–21. ALJ Busick more specifically highlighted Ms. G's "moderate limitations in interacting with the public, getting along with co-workers, and in accepting instruction or criticism from supervisors, as well as moderate limitations in carrying out detailed and complex instruction, in maintaining extended concentration for such tasks, and in adapting to significant changes in a work routine or setting." R. 21.

Several of the symptoms that led the ALJ to reach these conclusions regarding the "paragraph B" analysis are the same as those an individual would likely experience from the impairments that Ms. G argues he failed to consider. Specifically, the ALJ noted that Ms. G has complained of concentration problems and testing revealed a deficit in sustaining attention. However, ALJ Busick also found that Ms. G "was able to perform serial 7 calculations, indicative of some ability to sustain concentration." R. 20. The ALJ also noted that Ms. G has had "anxiety in social situations," but "she has been able to do some shopping, driving, and has attended some dance recitals and other public events." R. 20. This evaluation reveals that the ALJ indeed considered symptoms that overlap with those commonly experienced by individuals with agoraphobia and ADHD, and the ALJ's observations regarding their severity are supported by substantial evidence.

### RFC Discussion

ALJ Busick's RFC discussion similarly and thoroughly addresses Ms. G's functional limitations related to the symptoms that are attributable to the allegedly overlooked diagnoses.[3] For example, with respect to bipolar disorder, a condition that cycles between depressive and manic phases, the ALJ observed that Ms. G frequently reported feelings of depression in mental-health treatment, and indeed he found that

---

[3] The portion of the written decision addressing the RFC finding includes an in-depth examination of Ms. G's mental-health treatment records, the results of mental-status exams, her own statements about her symptoms, her reported activities, the opinion of a psychologist hired to conduct two consultative examinations, and the opinions of a state agency psychologist and psychiatrist who were asked to review the file. R. 23–27.

her depressive disorder was a severe impairment. Ms. G does not suggest that the ALJ failed to consider her symptoms of depression. ALJ Busick also noted that Ms. G testified to having experienced episodes of manic behaviors. R. 22. She stated that her manic episodes are followed by "extreme[] fatigue[] for a few days" and that she has missed family events because of low energy during those periods. R. 22.

When he considered Ms. G's assertion of disabling symptoms overall, the ALJ found that her complaints about the severity of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22. Particularly as it relates to Ms. G's manic episodes, this determination by the ALJ is supported by substantial evidence. The medical records from between April of 2011 and December of 2014 do not include reports of any manic episodes, nor do they include the bipolar disorder diagnosis at all. Indeed, in a progress note from June 2012, Ms. G denied having experienced any symptoms "of mania or possible hypomania." R. 415. Beginning in 2015, Ms. G began reporting some symptoms of mania (such as elevated mood) that are reflected in the later progress notes. R. 667–68, 673–74, 773–74, 775–76, 787–88, 795–96. However, these records do not include significant changes in Ms. G's mental-health treatment or identify more substantial functional limitations resulting from her manic phases. Ms. G's reports of elevated moods were not accompanied by symptoms like racing thoughts, becoming grandiose or psychotic, or engaging in significant risk-taking behaviors. *See* R. 773–74, 775–76, 787–88. Throughout the same period that progress notes reflect reports of manic symptoms, Ms. G continued to have relatively normal mental status exam and engaged in daily activities that are inconsistent with disability. R. 24–25. Accordingly, the record as a whole indicates that the result of the ALJ's RFC analysis would have been the same even had he considered her bipolar disorder.

The ALJ also thoroughly examined evidence concerning Ms. G's ability to pay attention and concentrate, indicating that he considered the evidence that could reasonably be attributed to Ms. G's diagnosis of ADHD. The ALJ concluded that Ms. G has some degree of limitation in sustaining concentration to complete complex tasks, but not to a disabling degree. *See* R. 24–25. He observed that Ms. G's mental status exams showed regular reports of anxious moods, hyperactivity, diminished eye contact, and similar complaints. R. 24 (including a massive string cite to mental health treatment

records supporting the ALJ's observations). Further, the ALJ noted that a "formal mental status exam found problems with reverse word spelling and the results an October 2015 Conner Continuous Performance Test demonstrated difficulty in concentration and attention. R. 24 (citing R. 598[4] and R. 769). And the ALJ gave partial weight to the opinion evidence offered by the consultative examiner and the psychologist and psychiatrist who reviewed the records.[5] R. 26–27. These opinions noted Ms. G's issues with paying attention, maintaining concentration, feeling anxious and overwhelmed, and experiencing depression. *See* R. 593–99 (April 2013 and October 2014 consultative examination assessments noting Ms. G's reports of issues with attention and concentration); R. 71–82 (reviewing psychologist's assessment); R. 87–98 (reviewing psychiatrist's assessment). Because the ALJ considered the evidence relating to Ms. G's functional limitations in paying attention and maintaining concentration during the RFC analysis, any error in failing to consider severity of the ADHD diagnosis at step two was harmless.

Finally, the Court concludes that the result would be no different if the case were remanded for the ALJ to consider whether Ms. G's agoraphobia diagnosis constituted a severe or non-severe impairment at step two. Agoraphobia is a type of anxiety disorder with diagnostic criteria involving a fear or anxiety about using public transportation, being in open or enclosed spaces, standing in line or being in a crowd, or being outside of the home alone. Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") § 300.22.A. (5th ed. 2013) (agoraphobia diagnostic criteria). ALJ Busick found one of Ms. G's severe mental impairments to be anxiety disorder and noted that she regularly complained of anxiety during mental health appointments. R. 23. He also noted that Ms. G testified to having anxiety associated with taking her kids to activities, shopping, dealing with strangers, and going outdoors. R. 22. However, the ALJ did not consider these symptoms to be disabling. He noted that she uses self-talking and visualizations techniques to calm herself down. R. 22. He also observed that the record showed Ms. G

---

[4] The ALJ cites Exhibit 6F, p.5, using the SSA's standard method for organizing the record. The observation regarding difficulty with reverse spelling is at R. 598, which corresponds to Exhibit 6F, p.6.

[5] Ms. G did not report episodes of mania to the psychologist who conducted the consultative exam. She does not challenge the weight that the ALJ assigned to any of the medical source statements in the record.

engaged in a wide range of activities that are not consistent with disabling limitations from the symptoms of agoraphobia. R. 25. Throughout her mental health records, Ms. G reported experiencing anxiety from a number of events, yet she was able to do chores, go for walks, take trips to North Dakota and Texas, go to the family's lake property, and drive multiple times a day. R. 25. These observations are consistent with substantial evidence on the record as a whole. *See generally* R. 401–592, 593–600, 644–690, 769–842.

Moreover, the records cited by Ms. G do not demonstrate that her bipolar disorder, agoraphobia, and ADHD diagnoses were so limiting that ALJ Busick's RFC determination should be reconsidered. *See* Pl.'s Mem. at 4–5 (citing R. 691, 694, 821, 823, 827, 833, 838, 841). These records reflect the same symptomology ALJ Busick discussed in the written decision. For example, the records indicate Ms. G reported being uncomfortable leaving her apartment and going shopping (R. 821–22, 823–24, 829), experiencing mild manic phases (R. 827), and having occasional "up times and low times" (R. 835). As discussed above, ALJ Busick considered these very same symptoms in connection with the severe impairments of anxiety and depression, compelling the conclusion that the result would be no different if this case were remanded back to the SSA for additional proceedings based on the error Ms. G claims the ALJ committed.

For all these reasons, the Court concludes that even if the ALJ erred in failing to find that Ms. G's diagnoses of bipolar disorder, agoraphobia, and ADHD are severe impairments, such an error was harmless, and remand is not required.[6]

### B. Mental Impairments and Migraines in Combination

Ms. G argues that the ALJ also failed to consider her mental impairments and migraines in combination. This argument is unpersuasive. The ALJ examined the evidence of Ms. G's migraine headaches as part of a broader discussion of all the record evidence, including her mental impairments. R. 19–21 (Listings discussion); R. 22–27 (RFC discussion). The ALJ specifically considered Ms. G's assertion that her headaches made it more difficult for her to concentrate. R. 22. The Eighth Circuit rejected a similar argument in *Browning v. Sullivan*, 958 F.3d 817, 821 (8th Cir. 1992).

---

[6] Ms. G does not argue that the ALJ's RFC finding in this case was flawed.

There, the ALJ discussed each impairment separately and concluded that all Ms. Browning's impairments did not preclude her from performing past relevant work. *Id.* The court found that it was unnecessary to require the ALJ to provide a more "elaborate articulation" of the analysis. *Id.* (quoting *Gooch v. Secretary of HHS*, 833 F.2d 589, 592 (6th Cir. 1987)). Essentially, this argument amounts to no more than a criticism of the ALJ's opinion-drafting technique, and therefore fails to identify a reversible error. *Johnson v. Apfel*, 240 F.3d 1145, 1149 (8th Cir. 2001) (finding that an arguable deficiency "in the ALJ's opinion-writing technique does not require this Court to set aside a finding that is supported by substantial evidence").

## IV. Conclusion

Based on the discussion above, Misty G.'s Motion for Summary Judgment **[ECF No. 13]** is **DENIED**, the Commissioner's Motion for Summary Judgment **[ECF No. 15]** is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**Let Judgment be entered accordingly.**

Date: March 22, 2019            *s/Katherine Menendez*
                                Katherine Menendez
                                United States Magistrate Judge